```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY

SUPERNUS PHARMACEUTICALS,          .
INC.,                              .
                                   .
        Plaintiff,                 . Case Nos. 14-cv-06102,
                                   . 14-cv-7272 and 15-cv-326
vs.                                .
                                   . Newark, New Jersey
ACTAVIS, INC., et al.,             . April 14, 2015
                                   .
        Defendants,                .
                                   .
And related actions.               .
```

```
                    TRANSCRIPT OF HEARING
           BEFORE THE HONORABLE STEVEN C. MANNION
               UNITED STATES MAGISTRATE JUDGE
```

APPEARANCES:

For the Plaintiff:      CHARLES MICHAEL LIZZA, ESQ.
                        Saul Ewing
                        One Riverfront Plaza
                        Newark, NJ  7102
                        (973) 286-6700
                        Email: Clizza@saul.com

                        RICHARD FRANK KURZ, ESQ.
                        Frommer Lawrence & Haug LLP
                        745 Fifth Avenue
                        New York, NY 10151
                        (212) 588-0800
                        Email: Rkurz@flhlaw.com

                        ED H. HAUG, ESQ.
                        Frommer Lawrence & Haug LLP
                        745 Fifth Avenue
                        New York, NY 10151
                        (212) 588-0800
                        Email: Ehaug@flhlaw.com

```
 1                        SANDRA KUZMICH, Ph.D.
                          Frommer Lawrence & Haug LLP
 2                        745 Fifth Avenue
                          New York, NY 10151
 3                        (212) 588-0800
                          Email: Skuzmich@flhlaw.com
 4

 5   For the Defendant    JOSEPH N. FROEHLICH, ESQ.
     Zydus:               Locke Lord LLP
 6                        Three World Financial Center, Suite
                          2001
 7                        New York, NY 10281-2101
                          (212) 812-8345
 8                        Email: Jfroehlich@lockelord.com

 9                        JAMES T. PETERKA, ESQ.
                          Locke Lord LLP
10                        111 South Wacker Drive
                          Chicago, IL 60606
11                        (312) 443-0270
                          Email: Jpeterka@lockelord.com
12
                          MICHAEL J. GAERTNER, ESQ.
13                        Locke Lord LLP
                          111 South Wacker Drive
14                        Chicago, IL 60606
                          (312) 443-1722
15                        Email: Mgaertner@lockelord.com

16
     For the Defendant    ARNOLD  B. CALMANN, ESQ.
17   Par:                 Saiber
                          One Gateway Center, 10th Floor, Suite
18                        1000
                          Newark, NJ 07102-5311
19                        (973) 645-4828
                          Email: Abc@saiber.com
20
                          TERRENCE J. CONNOLLY, ESQ.
21                        Latham & Watkins
                          885 Third Avenue
22                        New York, NY 10022-4834
                          (212) 906-1853
23                        Email: Terrence.connolly@lw.com

24

25
```

```
 1
        For the Defendant        ELEONORE OFOSU-ANTWI, ESQ.
 2      Actavis:                 Connell Foley, LLP
                                 86 Livingston Avenue
 3                               Roseland, NJ 07068
                                 (973) 535-0500
 4                               Email: Eofosuantwi@connellfoley.com

 5                               CHRISTINE INTROMASSO GANNON, ESQ.
                                 Connell Foley, LLP
 6                               86 Livingston Avenue
                                 Roseland, NJ 07068
 7                               (973) 597-3168
                                 Email: Cgannon@connellfoley.com
 8
                                 B. JEFFERSON BOGGS, JR., ESQ.
 9                               Merchant & Gould P.C.
                                 1701 Duke Street, Suite 310
10                               Alexandria, VA 22314
                                 (703) 684-2515
11


12
        Audio Operator:
13
        Transcription Service:        KING TRANSCRIPTION SERVICES
14                                     3 South Corporate Drive
                                       Riverdale, NJ  07457
15                                     (973) 237-6080

16      Proceedings recorded by electronic sound recording; transcript
        produced by transcription service.
17

18

19

20

21

22

23

24

25
```

```
 1                    (Commencement of proceedings at 4:33 P.M.)

 2

 3                    THE COURT OFFICER:  You're on the record in

 4     Supernus Pharmaceuticals Inc., et al., versus Actavis Inc.,

 5     et al., Docket Number 14-6102.

 6                    May I have appearances, starting with plaintiff's

 7     counsel?

 8                    MR. LIZZA:  Good afternoon, Your Honor, Charles M.

 9     Lizza of the Saul Ewing firm.  And I'm pleased to introduce

10     from the Frommer Lawrence firm, Ed Haug, Sandra Kuzmich and

11     Richard Kurz.

12                    THE COURT:  Welcome.  Welcome to each of you.

13                    UNIDENTIFIED SPEAKERS:  Thank you.

14                    THE COURT:  Was it a long ride through the tunnel

15     or the bridge?

16                    UNIDENTIFIED SPEAKERS:  Tunnel.

17                    THE COURT:  Tunnel?  Excellent.  You notice that I

18     don't have a Jersey accent.  You come over here -- never

19     mind.

20                    All right.  Anyone over here, let's start with --

21     wherever you want to start.

22                    MR. PETERKA:  Your Honor, good afternoon, Jim

23     Peterka from the firm of Locke Lord for defendant Zydus, so

24     maybe I'm a little out of turn here.

25                    THE COURT:  Okay.
```

 1              MR. PETERKA:  With -- with me is Mike Gaertner.

 2              MR. GAERTNER:  Good afternoon, Your Honor.

 3              MR. PETERKA:  Both of us are from Chicago, and Joe

 4    Froehlich from our --

 5              THE COURT:  Did you bring any deep-dish with you?

 6              MR. PETERKA:  I did not.

 7              THE COURT:  No?  Okay.  It's all right.  Maybe next

 8    time.

 9              MR. CALMANN:  Hello, Your Honor, Arnold Calmann for

10    defendant Par.

11              THE COURT:  Welcome back.

12              MR. CALMANN:  Thank you, Your Honor.  And with me

13    is my cocounsel Terry Connolly from Latham & Watkins.

14              MR. CONNOLLY:  Good afternoon, Your Honor.

15              THE COURT:  Welcome, also from across the great

16    river there?

17              MR. CONNOLLY:  New Jersey transit for me,

18    Your Honor.

19              THE COURT:  Okay.  Great.  Cloth seats -- we were

20    debating this this morning.  Cloth seats on the New Jersey

21    transit or --

22              MR. CONNOLLY:  Not today, they were a lovely

23    genuine Naugahyde from the baby Nauga.

24              THE COURT:  Okay.

25              MR. CONNOLLY:  They were vinyl.

 1              THE COURT:  Okay.  Excellent.  A lot better for bed

 2   bugs.

 3              Okay.  We were just wondering.

 4              Yes?

 5              MS. OFOSU-ANTWI:  Good afternoon, Your Honor, for

 6   Actavis, Eleonore Ofosu-Antwi from Connell Foley and

 7   Christine Gannon.  And with me is our cocounsel from Merchant

 8   Gould, Jeff Boggs.

 9              MR. BOGGS:  Good morning, Your Honor -- or

10   afternoon.

11              THE COURT:  Good afternoon to both of you.  It's

12   morning somewhere.  Not a problem.

13              All right.  I think we've got everybody.

14              All right.  So the first order was the parties'

15   joint request to consolidate, Docket 14-CV-6102 with

16   14-CV-7272 and 15-CV-326.  Correct?  All right.  First let me

17   ask -- I didn't check 7272.  Has there been an answer filed

18   in that one?  Anyone know?

19              MALE SPEAKER:  There's been an answer filed, yes,

20   Your Honor.

21              THE COURT:  In each of them.  Right?  Okay.

22   Because I remember when I looked at this maybe two months

23   ago, there was only -- one of them had not had an answer yet.

24   But everybody's answered in each of these cases, then, at

25   this point right?

 1            ATTORNEY FOR PLAINTIFF:  Well, not exactly.

 2            THE COURT:  Okay.

 3            ATTORNEY FOR PLAINTIFF:  Because there's another

 4    patent that's -- going to -- the case.

 5            THE COURT:  Okay.

 6        (Simultaneous conversation)

 7            ATTORNEY FOR PLAINTIFF:  So there's going to be

 8    another round.

 9            THE COURT:  Okay.  But on what's already in the

10    case.

11            ATTORNEY FOR PLAINTIFF:  I think so.  I think

12    there's a reply to -- counterclaims.  To par's answer and

13    counterclaims --

14            THE COURT:  Okay.  Are we expecting any additional

15    parties or attorneys that aren't here yet?

16            ATTORNEY FOR PLAINTIFF:  Additional parties?  No,

17    not that I'm aware of.

18            THE COURT:  Okay.  Over here, you all agree?

19            MR. PETERKA:  We don't expect any additional

20    parties on behalf of Zydus -- and I think on behalf of the

21    defendants, that's --

22            THE COURT:  Excellent, okay.  So at least at this

23    point, I've got everybody that we collectively think will be

24    here and joint application to consolidate.  I will issue

25    orders to consolidate the matter for pretrial management only

1   at this point.  And we'll put those in each of the respective

2   cases.

3            Okay.  So next thing -- thank you very much for

4   that.

5            Next will be our draft initial scheduling order.

6   Okay.

7            Okay, motion practice, most of you who have been

8   here before, you know this.  No motions other than Rule 12

9   motions without leave of Court, so that's essentially

10  probably everything that we've got left in this case, to come

11  to the Court before filing.  We do not do discovery motions

12  here.  We hear discovery motions on an informal basis.

13           If for some reason, there's some other motion that

14  needs to be filed, I ask that it be sent up to me by joint

15  letter.  The folks that have been here before are familiar

16  with this.  And as of this week, I now have 989 civil cases.

17  So this is one of the reasons why I ask for joint

18  submissions, because for that many cases, for me to get a

19  letter, for example, from plaintiff's counsel and then I -- I

20  am not going to do anything on it until I have a letter from

21  defense counsel, well, I might get five letters and they

22  might stagger in with your various schedules over a two-,

23  three-week period, can't possibly keep track of those issues.

24           So I ask that joint disputes or disputes be raised

25  by joint letter.  Requests for motions be raised by joint

1   letter.  This way, I've got an issue and then I've got the

2   plaintiff's position, defendants' respective positions or a

3   united position or whatever, on that issue, and then we go

4   through each issue like that.  It's a lot easier for me to

5   just figure out what the dispute is, get you folks on the

6   phone, get you a bench decision or a written decision,

7   whatever is needed to resolve the issue as much as possible

8   or as quickly as possible.

9           So any questions on that?  No?  Great.  Okay.

10          Pro hac vice applications, you folks have already

11   been doing it.  You know how to do it.  Keep doing it.  Just

12   reminder, local counsel have to be involved.  So if we have a

13   telephone conference, local counsel have to be on the

14   telephone.  If we're going to have a matter here, then if

15   local counsel genuinely can't break away and they can appear

16   by telephone, I'll take that on a case-by-case basis.

17          Then, let's see what else here.

18          Discovery disputes, meet and confer, meet and

19   confer, meet and confer.  Do your darnedest to narrow the

20   issues as much as possible.  Again, just understanding with

21   judicial economy, then the volume that I'm dealing with here,

22   I want to give you as much attention as possible, so I ask

23   that you do your best to narrow the disputes.  And I see from

24   your joint submission that we're already off to a great

25   start, very detailed, and I see that there's a lot of

1    agreement, some areas where there are no -- no agreement or

2    there's disagreement, and that was part of what I was doing,

3    sifting through in the back there in chambers.  So -- but all

4    of my protocols, everything I'm telling you is specified

5    right here in the scheduling order, as the locals already

6    know.

7            All righty.  So our first -- let's see here.  Nope.

8            Make sure I've got this all in order here.  Okay.

9            All right.  So our first date on the schedule will

10   be getting me a protective order by May 15th -- May 14th,

11   sorry.  You can keep notes, but I'll have it all in the

12   schedule here.  I've only actually deleted one order between

13   the bench and chambers in three years.  So keep your notes.

14   I can't say it's never happened, but it's only happened once

15   where I got back there and I'm looking and somehow I deleted

16   the order, and I was like, oh, gosh, I have to try to do that

17   from memory or get everybody's notes.

18           So protective order, of course, just send me the

19   consent order with a certification from one of you covering

20   the Pansy factors, and we'll be good to go.

21           Motions to seal on this case, Ryan's handling

22   those, right, still, motions to seal.  Okay.

23           The law clerk on the case, Ms. Danita Minnigan,

24   right here, she'll be handling most everything in the case

25   with the exception of motions to seal.  That'll go to my law

1    clerk Ryan Lamb.  So if you have questions about that, you

2    can contact him to make sure it all gets submitted in the

3    proper format.  And any questions can go to him on that.

4    Other questions to Ms. Danita Minnigan.

5            Disclosure of asserted claims by May 19.

6            Invalidity contentions and noninfringement

7    contentions, May 26th.

8            Written discovery can start after June 2d.

9            And on this one, interrogatories plaintiff can

10   serve 25 single-question interrogatories on each defendant.

11   Defendants may collectively serve up to 15 common

12   interrogatories.  Common interrogatories are defined as

13   interrogatories -- pay attention here just in case we have

14   any issues concerning the common discovery issues.

15           The following issues are common discovery issues:

16   One, the validity or invalidity of any asserted patent claim;

17   two, the enforceability or unenforceability of any asserted

18   patent; three, the conception and reduction to practice of

19   any asserted patent claim; and, four, the prosecution of any

20   asserted patent.

21           Common discovery issues shall also include any

22   discovery issue that is relevant to all defendants.  No other

23   issues other than what has been defined herein shall be

24   considered a common discovery issue.

25           Each defendant may also serve 10 individualized

1   interrogatories which are defined as interrogatories on any

2   discovery issue that is not a common discovery issue as

3   previously defined.

4           Questions on that?  No?  I see none.  Excellent.

5           Document demands.  Your papers did not specify

6   amounts of document demands.  The default I typically have in

7   all civil cases is 40 separate requests for production of

8   documents.  I am willing to hear from you folks on that.

9   Starting with plaintiffs.

10           Do we need a number?  Do we not need number?  Go

11   into your huddles, if you need.

12           ATTORNEY FOR PLAINTIFF:  I think if -- given that

13   there are six patents in this case, and there are three

14   defendants, multiple parties, actually, but three defendants

15   really, I think 40 may be a bit too limited.

16           THE COURT:  Okay.

17           ATTORNEY FOR PLAINTIFF:  So I think a little more

18   would be appropriate.

19           THE COURT:  Throw out a number.  I am game with

20   whatever you folks agree to.

21           ATTORNEY FOR PLAINTIFF:  I would say 60.  60.  6-0.

22           ATTORNEY FOR DEFENDANT:  Your Honor, may I just --

23   may I inquire is that -- is that broken down between 60

24   individual -- like we've done in --

25           THE COURT:  That was going to be my next question

1   back over there.

2            ATTORNEY FOR DEFENDANT:  Interrogatories just to

3   make clear so we know how to respond to them.  Okay?

4            THE COURT:  So what are you proposing?  60 from

5   plaintiff on everyone?  And then how many coming back?  Do

6   you want common and individual or just a flat number for

7   each?  Or the same number for each.

8            ATTORNEY FOR PLAINTIFF:  I think we should have,

9   you know, at least maybe -- if we're going with the 60

10  number, per side.

11           THE COURT:  Right.

12           ATTORNEY FOR DEFENDANT:  I guess maybe before --

13  was at 60 common -- how many of that is common versus

14  individualized --

15           THE COURT:  Okay.

16           ATTORNEY FOR DEFENDANT:  -- and we -- we look at it

17  that way, Your Honor, I don't know --

18           THE COURT:  Okay.  Well, we can -- right now, I was

19  going -- my default was whatever number for each party on any

20  party, that was my default.  But I'm about to get a proposal

21  here from plaintiff.

22           ATTORNEY FOR PLAINTIFF:  Yeah, I made clear, how

23  about 45 common requests to everybody, and then 5 individual

24  ones to the extent we need them.  They can do reciprocal.

25           THE COURT:  And 60 for yourself?

 1              ATTORNEY FOR PLAINTIFF:  So that would be 60,

 2    right?  Is that right?

 3              THE COURT:  So 60 for plaintiff on -- on each

 4    defendant.  60 on plaintiff for each defendant.  And then

 5    he's proposing 45 common for all the defendants plus -- or

 6    were you saying that's what you would serve on them?

 7              ATTORNEY FOR PLAINTIFF:  I was going that far.

 8              THE COURT:  Oh, sorry.

 9              ATTORNEY FOR PLAINTIFF:  They don't have that

10    many --

11              THE COURT:  Okay.

12              ATTORNEY FOR PLAINTIFF:  I was proposing 45

13    common --

14              THE COURT:  For you.

15              ATTORNEY FOR PLAINTIFF:  -- document requests for

16    the plaintiff to all the defendants.

17              THE COURT:  Okay.

18              ATTORNEY FOR PLAINTIFF:  So that would be 45 to

19    each one.

20              THE COURT:  Okay.  45 to each.

21              ATTORNEY FOR PLAINTIFF:  Okay?  And then five

22    individual ones, meaning there may be some requests that I

23    would have of par that I don't have of Zydus.

24              THE COURT:  Okay.  So you would all get the same 45

25    plus five specific to each defendant.  And then what would

1    they serve on you?

2              ATTORNEY FOR PLAINTIFF:  No more than 60.

3              THE COURT:  Combined.  Okay.

4              ATTORNEY FOR DEFENDANT:  Your Honor, under your

5    rules, we get 40 each, so that's 120.  So I hope -- we're

6    trying to formulate a response here (indiscernible).  We're

7    also trying to figure out a way -- there are going to be some

8    common things, right, so we don't need to all serve the same

9    ones -- that's why we're trying to work something out at the

10   corner of the table that respects the number that we would

11   get otherwise, at the same time tries to minimize the burden

12   on the plaintiff.

13             ATTORNEY FOR PLAINTIFF:  I would say that I don't

14   really -- in these kinds of cases, I think we all would

15   agree, I don't really see different document requests coming

16   unless you have different issues.  And right now from what I

17   see from the answers, I believe that we're only talking about

18   validity, invalidity, and infringement.

19             THE COURT:  Okay.

20             ATTORNEY FOR PLAINTIFF:  Right?  So if that stays

21   that way, then I don't really see why you need 40 each.

22             ATTORNEY FOR DEFENDANT:  I would expect that on the

23   invalidity, we can find some common ground on some common

24   document requests.  We don't have to ask about prosecution

25   history (indiscernible).  But I do think that it's so early

 1   in the case now, we're struggling with on the infringement

 2   side particular, and there may be alternative invalidity

 3   theories depending upon claim construction differences that

 4   might -- between the defendants as well, just trying to get a

 5   grasp here without getting out ahead of my colleagues here as

 6   to (indiscernible).  So if you would just give us one moment.

 7              THE COURT:  Sure.  Take your time.  If you want to

 8   go into the jury room, you're welcome to.

 9              ATTORNEY FOR DEFENDANT:  I think it'll

10   (indiscernible).

11              THE COURT:  Okay.

12         (Pause in proceedings)

13              ATTORNEY FOR DEFENDANT:  Mr. Connolly just

14   articulated this, and I don't want to speak over -- over --

15   so I'll let Mr. Connolly speak.

16              THE COURT:  Please.

17              MR. CONNOLLY:  A case of the blind leading the

18   blind, Your Honor.

19              THE COURT:  Okay.

20              MR. CONNOLLY:  Your Honor, the proposal for the

21   three defendants would be that we would have five zero

22   common.

23              THE COURT:  Okay.

24              MR. CONNOLLY:  Document requests.  And each

25   individual defendant would get 15 individual requests.  And

 1   we're not saying that we're going to use them, but, again,

 2   from our perspective, Your Honor, there is still one more

 3   patent coming into the case --

 4            THE COURT:  Okay.

 5            MR. CONNOLLY:  -- we just -- and, you know,

 6   frankly, Your Honor, I think if we need to come back to you

 7   for additional ones, we would do that.  That's less than what

 8   you -- than what your standing position is, which I think

 9   would be a total of 120 among the three defendants.

10            THE COURT:  Okay.  Okay.

11            ATTORNEY FOR PLAINTIFF:  I think with that offer,

12   that would be fine if we get the same thing -- 50 and 15 to

13   each one.

14            THE COURT:  50 and 15?  Excellent.  We're sold.

15   Thank you, gentlemen and ladies.

16            50 and 15, okay, we will write that up.

17            Wow, we're just flying right along.  Think we could

18   settle this afternoon?  No?  Okay.  Maybe not.

19            All right.

20            Requests for admissions, I'll go with something

21   similar.  How's that?  Are we good on that?  Requests for

22   admissions, something along the same lines?

23            ATTORNEY FOR DEFENDANT:  Your Honor

24   (indiscernible), just off the top (indiscernible) requests

25   for admissions on document authenticity or foundation

```
 1   (indiscernible), whatever you want to do in terms of requests
 2   admissions obviously, we will follow the Court's direction,
 3   but I just want to raise that issue (indiscernible) thoughts
 4   on that, because we typically don't include those in whatever
 5   limits (indiscernible).
 6             THE COURT:  I'm generally fine to go with whatever
 7   limit the parties want to agree to.  But the one thing I need
 8   to make clear is requests for admissions are not
 9   interrogatories.  Okay.  Anyone who uses them as
10   interrogatories, they'll be stricken upon letter application.
11             So with that said, if you're really using requests
12   for admissions as requests for admissions, if the parties
13   want to agree to a -- you know, no limit or a limit, I'm fine
14   either way.
15             MR. PETERKA:  Your Honor, we -- this is Jim
16   Peterka, we address that on page -- I think it's on page 21
17   of --
18             THE COURT:  Oh, did I miss that one?
19             MR. PETERKA:  Yes, we -- I think we agreed that
20   Supernus would get 50 per total on each defendant.
21   Defendants may jointly serve 30.
22             THE COURT:  Okay.  That's where I got those numbers
23   from, then.
24             MR. PETERKA:  That also (indiscernible).
25             THE COURT:  Okay.  That's what I'd put in there.
```

|Hearing
|14-cv-06102, April 14, 2015

 1  I'd put 50 for plaintiff and then 30 common and 20

 2  individualized?  Okay.

 3           ATTORNEY FOR DEFENDANT:  Yes.  And, Your Honor,

 4  just to go to point, I think we have agreement that we're

 5  excluding from that limitation, which are really substantive

 6  RFAs, what I'll call the authenticity RFAs, each side, for

 7  example --

 8      (Simultaneous conversation)

 9           ATTORNEY FOR DEFENDANT:  I just wanted to make sure

10  that it's in Your Honor's order --

11           THE COURT:  It's not in my order, and I'm putting

12  it in right now.

13           ATTORNEY FOR DEFENDANT:  So essentially for the --

14  what I'll call the authenticity-type business record

15  admissibility-type RFAs.

16           THE COURT:  That's a great addition.  Thank you so

17  much.  I think you've just changed my form.

18           ATTORNEY FOR DEFENDANT:  I actually just stole that

19  idea from my cocounsel.

20           THE COURT:  That's great.  You've given

21  attribution, so -- all right.

22      (Pause in proceedings)

23           THE COURT:  I think we can actually amend the local

24  patent rule today while we're here, get all this captured,

25  and we'll be good.

|Hearing
|14-cv-06102, April 14, 2015

1           Okay.  Time, time limits to address deficiencies in

2    responses to discovery requests or RFAs.  I typically say 30

3    days to address, but that's typical for all civil cases.  I

4    want you folks to think about that and let me know your time

5    limits.

6           So basically you've received an interrogatory or

7    response to a request for admissions or a response to a

8    document demand, how much time do you have to let other side

9    that you believe there's a perceived deficiency there.  I

10   typically say in most cases 30 days to keep the case rolling

11   so that you don't come back eight months later, and, say,

12   Interrogatory Number 2 was deficient and, Judge, we can't go

13   forward with our hearing until that is cured.  And then my

14   response is always like, why didn't you tell us six months

15   ago?

16           Well, we just read it.

17           ATTORNEY FOR PLAINTIFF:  I think that is fine for

18   the plaintiff.

19           ATTORNEY FOR DEFENDANT:  Your Honor, the only

20   question would be about with respect to document requests,

21   that would be 30 days to identify deficiencies in the written

22   response or 30 days to identify issues in the production.

23           THE COURT:  In the written response.  In the

24   written response.

25           Obviously, for good cause, that may affect, because

1   you may get response that appears great today, but then

2   additional documents or a deposition happens later on, you're

3   like, whoa, that response was deficient, we didn't even know

4   it because of what we just received.

5               It would not include those situations.

6               ATTORNEY FOR DEFENDANT:  Your Honor, just as a

7   point of clarification, taking what you had said earlier

8   about the meet and confer, meet and confer, meet and confer.

9               THE COURT:  Yes.

10              ATTORNEY FOR DEFENDANT:  May I suggest that you

11  make that 45 days, because oftentimes it takes the part- --

12  to have a meaningful meet-and-confer, it often -- there's

13  often several meet-and-confers back and forth.

14              THE COURT:  Right.

15              ATTORNEY FOR DEFENDANT:  As horses get traded, et

16  cetera.

17              THE COURT:  Okay.

18              ATTORNEY FOR DEFENDANT:  So I would propose that it

19  be 45 days just to allow -- otherwise, I think you may see a

20  truncated meet-and-confer process.  (Indiscernible).

21              THE COURT:  And just so -- just so I am clear, this

22  is not to limit your time on meeting and conferring.  This is

23  just to identify the deficiency to the other side.

24              ATTORNEY FOR DEFENDANT:  Oh, okay.

25              THE COURT:  So this is starting the meet-and-confer

 1  process.

 2            ATTORNEY FOR DEFENDANT:  Okay.  I apologize

 3  (indiscernible).

 4            THE COURT:  Okay.  But the 45 days is fine with me

 5  as well, if you need it.

 6            MR. GAERTNER:  Sure.  Mike Gaertner again.

 7            In a joint defense context -- -- (indiscernible)

 8  more days so we can at least (indiscernible) on same page, I

 9  think would be -- to facilitate the whole process, so I would

10  actually advocate 45 days -- that.

11            THE COURT:  Okay.  You folks fine with that?

12            ATTORNEY FOR PLAINTIFF:  It's okay.

13            THE COURT:  Great.  Thank you very much.  45 days

14  it is.

15            And again, this just starts the meet-and-confer

16  process.  So with my discovery dispute protocol, for those

17  that haven't seen it before, it's identify the deficiency in

18  writing.  If you need to follow up in writing.  Then at some

19  point, getting trial counsel on the phone.  So before any

20  discovery dispute gets raised to me, trial counsel on both

21  sides have to have had a bona fide meet-and-confer.  You can

22  start with partners and associates, but before it gets to me,

23  trial counsel have to weigh in on both sides, speaking person

24  to person, preferably on the telephone or in person over a

25  nice meal, where everybody's more relaxed.  Then you've

1    narrowed it down, and then that's when the joint dispute

2    letter gets drafted, after it's -- trial counsel have weighed

3    in.

4              So what I don't want is for trial counsel to come

5    in to argue the issue before me and then to tell me, well,

6    Judge, of course, you know, I didn't review these 500

7    disputes, but my partner and the associate did.  And at that

8    point, what I typically say is there's my jury room, I'll see

9    you in three hours after you've narrowed the 500 disputes

10   down to whatever.

11             Okay?  So that's how that process works.

12             All right.  So -- all right, the next on the

13   calendar, trying to stay in order, initial disclosures, I

14   went with May 26th for the exchange of initial disclosures.

15             Also with the idea that we would have our next

16   conference in person, if you folks think we'll need it by

17   then, June 23d.

18             Most other cases, I usually go out 90, 120 days,

19   180 days.  But considering that this is three cases, I want

20   to give it a little bit more attention, if you think it's

21   warranted.

22             ATTORNEY FOR DEFENDANT:  Your Honor, I think it's

23   great to schedule that and, you know, in the event the

24   parties believe it's not necessary, we could always -- your

25   calendar.

1          THE COURT:  You're speaking my lingo.  You have --

2    we haven't even met, and you're speaking my lingo.

3          So, I mean, think about that.  So my calendar

4    currently has space for you 3 o'clock on June 23d.  I don't

5    know if anyone has a graduation that week and they're

6    critical to being here.

7          ATTORNEY FOR PLAINTIFF:  I don't have a graduation

8    of sorts, but I'm heading out to a bench and bar conference

9    that starts the 24th.

10          THE COURT:  Okay.

11          ATTORNEY FOR PLAINTIFF:  -- out to California, and

12   I'm president of the bar there, so I need to show up.  And I

13   think there's some other people here too (indiscernible) at

14   the same conference.

15          THE COURT:  Thank you for your service to the bar.

16          All right.  Let me look at the calendar here just

17   to see if I have other dates just slightly before that.

18      (Pause in proceedings)

19          THE COURT:  I can do Wednesday the 17th but not

20   until 4 P.M.  If that's fine.

21          MR. PETERKA:  Your Honor, Jim Peterka, I don't mean

22   to interrupt, but just one thing I'll note is the -- I think

23   you said the first date (indiscernible) serving discovery is

24   June 2d.  Right?

25          THE COURT:  Hold on.  Yes.

 1             MR. PETERKA:  The only concern with having a

 2  hearing at June 23d, it's a little bit --

 3             THE COURT:  Soon?

 4             MR. PETERKA:  -- soon.  And, you know, really --

 5             THE COURT:  Good point.  It is good point, so

 6  June 2d, responses within 30 days.  July 2d, deficiencies by

 7  August 2d.  No, that's good point.

 8             Thank you very much.  So maybe we'll wait until

 9  after the bench and bar conference.

10             MR. PETERKA:  (Indiscernible).

11             ATTORNEY FOR PLAINTIFF:  That's fine, Your Honor.

12             THE COURT:  No, a very good point.  Thank you for

13  reminding me of what I us- -- my usual thought process.

14      (Pause in proceedings)

15             THE COURT:  All right.  Do we have any major

16  vacation plans for anyone the week of August 24th?  I can't

17  remember when Labor Day is.  If the September -- the first

18  week of September?

19             THE COURT OFFICER:  September 7th.

20             So do you folks from out of state want to fly in

21  for the Jersey shore and either spend the weekend and be here

22  Monday or be here on a Friday and then go to the shore for

23  the weekend?  Because I can do the 24th or the 28th, if

24  that's better for folks that are flying.

25             MALE SPEAKER: (Indiscernible).

 1          THE COURT:  Okay.  So the 28th going once, 28th

 2  going twice -- and the other thing just so you know, I'm

 3  willing to have local here and our pro hac by telephone if

 4  you folks want to arrange among yourselves a joint call-in

 5  number, I can do that as well.

 6          MALE SPEAKER: (Indiscernible).

 7          THE COURT:  The thing I typically say for folks on

 8  the joint call-in number is they just have to remember that

 9  we do the recording.  There's no recording on the other end.

10          So I'm going to go with --

11          ATTORNEY FOR DEFENDANT:  Your Honor, I think

12  somebody's checking something.

13      (Pause in proceedings)

14      (Discussion on scheduling)

15          THE COURT:  All right.  24th of August.  And -- all

16  right.  So just between now and then, I'm going to put it

17  down as an in-person, but if between now and then you folks

18  me -- want to arrange among yourselves a die-in number for

19  the folks that need to travel and I'll just have the locals

20  here, that's fine.  And then everyone else can be via

21  telephone.  And then of course, you can confer with your

22  local via cell phone privately, if you need to do that.  I'm

23  happy to accommodate any of that.

24          So, okay.  So right now, we're down for the 24th at

25  3.

1          And your joint letter will be 10 days out, since

2     it's a Monday.  So by August 14th, you would provide me with

3     a joint agenda letter up to three pages, just going over any

4     scheduling or other issues that we need to discuss in terms

5     of changing the scheduling order in a joint letter by the

6     14th.

7          If at that point, we already have a joint dispute

8     letter on file that hasn't been resolved, then that'll be

9     essentially the agenda for the telephone conference is the

10    way I typically do it.

11         If you want to send me a joint agenda letter that

12    says the schedule that we've drafted is excellent and

13    everybody's getting along well and there are absolutely no

14    issues to be resolved by the Court, I am happy to take that

15    and adjourn the conference to another date, one that you can

16    suggest after conferring with my courtroom deputy, find an

17    opening in my schedule, I'm happy to do that too.  I love

18    those letters.  Those are my favorite letters.  That's for

19    you folks back here too.

20         Okay.  So then the next thing after that --

21    actually -- nope, since we just moved this, we are out of

22    order.

23         Okay.  All right.  So backing up, we'll have

24    disclosure of infringement contentions by July 10th.

25         I think I've done something wrong here.

|Hearing
|14-cv-06102, April 14, 2015

1          All right.

2       (Pause in proceedings)

3          THE COURT:  I'm going to go through your proposal

4   again and double-check with my dates, because I seem to be

5   missing some of the dates that I wanted to put in here.

6          Okay.  And then I will just get this up on ECF.

7          Anything else for plaintiffs for today?

8          ATTORNEY FOR PLAINTIFF:  I don't think we --

9   Your Honor didn't address the depositions.

10         THE COURT:  Oh, no, I did not.  Let me hit that for

11  you.  Thank you.

12         Depositions, I think I was just going to go with

13  the 10.  And this is just fact depositions.  Okay.

14         Let's see, what page was your proposal on the

15  depositions?

16         ATTORNEY FOR PLAINTIFF:  Page 20 and 21 of the

17  (indiscernible).

18         THE COURT:  21.  Parties agree that plaintiff may

19  take 10 of each defendant.

20         ATTORNEY FOR DEFENDANT:  The disagreement between

21  the parties, Your Honor is set out on page 21, under the

22  heading Supernus's position and defendants' position.

23         THE COURT:  Okay.

24         ATTORNEY FOR DEFENDANT:  What -- what precedes that

25  is where the parties have agreement.

1           THE COURT:  Okay.  Deps, page 21, 22.

2       (Pause in proceedings)

3           THE COURT:  Okay.  So essentially the difference is

4   between 10 and 15.  Correct?

5           MR. CONNOLLY:  Yes, Your Honor, and the other --

6   I'm sorry, Your Honor, it's Terry Connolly for Par.  The

7   other distinction is whether -- the defendants' position is

8   we should get a 10-hour deposition with the four inventors.

9   The inventors are, my understanding, belief, Your Honor, is

10  is that these -- they're the same inventors on all patents in

11  the case.

12          THE COURT:  Okay.

13          MR. CONNOLLY:  So that we -- you know, 7 hours for

14  all noninventor depositions, 10 hours for the deposition,

15  plus the (indiscernible) 10 versus 15 on the theory that

16  we've got three defendants versus one (indiscernible).

17          THE COURT:  And then, of course, there's the

18  translation, which would extend the time.

19          MR. CONNOLLY:  Yes, Your Honor.

20          THE COURT:  Okay.

21          ATTORNEY FOR PLAINTIFF:  I don't think translation

22  is going to be an issue, certainly not on inventors.

23          On the inventors, I don't really see why they have

24  to be -- should be now agreed to be or ordered to be up to 10

25  hours.  I think 7 hours is sufficient.  If it turns out that

 1  they need more time, I think they'll say that in good faith

 2  and we'll respond in good faith and we'll deal with it.  I

 3  will also -- they may not -- defendants may not know this,

 4  but of the four inventors, two of them are not under our

 5  control.  They're not in the employ of plaintiff.  So they're

 6  third parties.

 7           THE COURT:  Okay.

 8           ATTORNEY FOR PLAINTIFF:  So, you know, I can't say

 9  that I represent them right now, either.  We don't know.

10           But in any event, I don't really personally think

11  we should stay with the 7-hour limit.

12           However, as I said, once documents are produced and

13  if the defendants really have a good-faith base to believe

14  they need more than 7 hours, we will respond in good faith

15  and work it out.

16           Because there are other -- there are other

17  depositions that will be taken here that I could probably say

18  the same thing now based on speculation.  The head formulator

19  for Actavis maybe I need more than 7 hours, because they're

20  going to give me a ton of documents.  But I don't really know

21  that.

22           And so I just don't think because it's an inventor,

23  they should be carved out as a special case.

24           THE COURT:  Okay.

25           ATTORNEY FOR PLAINTIFF:  And by the way, the six

1   patents, yes, there are six patents.  But they're all the

2   specification.  So it's not like six completely different

3   patents from the standpoint of, you know, the underlying

4   conception, reduction to practice and all of that.  All of

5   that information that they would get into.

6            I think there is one other difference, though, on

7   the depositions, and that is the defendants want an unlimited

8   number, if I understand this correctly, of third-party

9   depositions.  Do I have that right?

10           ATTORNEY FOR DEFENDANT:  That's our position.  I

11  don't -- I didn't see you taking a contrary position, and so

12  that's why I didn't mention it.

13           ATTORNEY FOR PLAINTIFF:  Well, no, I -- we wrapped

14  it up into the limit that we were deposing, the 10.

15           ATTORNEY FOR DEFENDANT:  -- your phraseology was

16  defendants may take 10 of -- of Supernus, and so I take it

17  your position now is you want a limit on third-party

18  depositions (indiscernible).

19           ATTORNEY FOR PLAINTIFF:  You know what?  I'm not so

20  sure I need a limit.  I think that I personally don't foresee

21  a hundred depositions in this case, and I think that if we

22  think -- I would be willing to live without limits as long as

23  the Court would allow us to come in, any party, and say, this

24  is burdensome or whatever, for whatever reason.  Because I

25  don't think there are going to be that many depositions.

|Hearing
|14-cv-06102, April 14, 2015

```
 1   They want to take 15 of Supernus.  I am not sure if they have

 2   15 people to depose, really, with any knowledge.  It's a

 3   small company.  All right.

 4          I just don't want to be in a position that they get

 5   15, and they're going to kind of like -- I don't know.  Make

 6   sure they get 15 when they're not responding -- not relevant.

 7   That's all.

 8          ATTORNEY FOR DEFENDANT:  Well, Your Honor, first

 9   off, we're fine with no -- with -- I should say Par would be

10   fine without limits.

11          MALE SPEAKER:  Oh, third party?

12          MALE SPEAKER:  Yeah, what do -- and was your

13   position?

14          ATTORNEY FOR DEFENDANT:  Your Honor, can we

15   consult.  I'm sorry to burden the record.

16          THE COURT:  Sure.  Go ahead.

17       (Recess:  5:10 P.M. to 5:14 P.M.)

18          THE COURT:  We're back on the record.

19          MR. GAERTNER:   Thank Your Honor.  It's Mike

20   Gaertner on behalf of Zydus, and I'll take a stab at

21   articulating the middle ground approach, my cocounsel here is

22   somewhat -- encouraging to stand up.

23          I think what we would propose is trying to find a

24   middle-ground approach where each side would take 12

25   depositions.  In other words, that Mr. Haug would be able to
```

|Hearing
|14-cv-06102, April 14, 2015

1    take up to 12 depositions of either party.  The defendants

2    would take up to 12 depositions of Supernus, and that there

3    would be no limit on the third-party --

4              MALE SPEAKER:  That's fine.

5              MALE SPEAKER:  Just one question --

6              MALE SPEAKER:  That's 12 of each defendant.  Right?

7              MALE SPEAKER:  Yes, 12 -- yes --

8              ATTORNEY FOR DEFENDANT:  With one point of

9    clarification, Your Honor?  And that is the two inventors

10   would not count against -- the two inventors who are not

11   Supernus employees, would not count against the 12.  Is that

12   right?

13             ATTORNEY FOR PLAINTIFF:  Yeah, they are third

14   parties.

15             MALE SPEAKER:  Yes, okay.

16             ATTORNEY FOR PLAINTIFF:  And I would ask you not to

17   contact any of them, even though I just said I'm not --

18             THE COURT:  So your proposal is 12 each idea, plus

19   no limit on third parties.

20             ATTORNEY FOR PLAINTIFF:  Correct.

21             THE COURT:  Fine with me.  Okay.  I'll put that in

22   the order.

23        (Pause in proceedings)

24             ATTORNEY FOR PLAINTIFF:  Sorry, Your Honor, if I

25   may, and I guess we had another provision.  On the 30(b)(6)

```
 1   depositions, each 7-hour day counts as one deposition --
 2   right?
 3              THE COURT:  Yeah, I haven't gotten to that one yet.
 4              Yeah, on the 12, again, just so I'm clear,
 5   defendants collectively taking 12 depositions, plus no limit
 6   on third parties, so it would be 12 of Supernus.  And then
 7   Supernus taking 12 of all -- or 12 each.  Each.
 8              ATTORNEY FOR DEFENDANT:  Each of three defendants.
 9              THE COURT:  Got it.
10              ATTORNEY FOR DEFENDANT:  For a maximum total
11   theoretically of 36.
12              THE COURT:  Okay.
13              ATTORNEY FOR DEFENDANT:  -- third parties.
14              THE COURT:  Okay.  I got it now.
15              All right.  All right.  And then I will come up
16   with my own language dealing with the hours and all of that.
17   And there will be something in there for translation, if
18   necessary.
19              ATTORNEY FOR DEFENDANT:  So, Your Honor, you'll
20   address the inventor hours (indiscernible).
21              THE COURT:  Yeah, I'll put it in the order.  I want
22   to think about it for a little bit.
23              All right.  Anything else that we generally need to
24   go over today.
25              MR. CALMANN:  Yes, Your Honor.
```

|Hearing
|14-cv-06102, April 14, 2015

 1            THE COURT:  Yes.

 2            MR. CALMANN:  It's Arnie Calmann.

 3            Two issues.  First one relates to motions to amend

 4  with or without leave of Court.  Under Rule 3.7 of the patent

 5  rules and Rule 15 of the federal rules.

 6            THE COURT:  Okay.

 7            MR. CALMANN:  Second issue relates to the question

 8  of bifurcation of the issue of willfulness discovery.

 9            THE COURT:  Yes.  We're not going into willfulness

10  at this time.

11            MR. CALMANN:  Thank you, Your Honor.

12            THE COURT:  Okay.

13            MR. CALMANN:  May I address the --

14            THE COURT:  On the amendment, please.

15            MR. CALMANN:  On the mo- -- yes, may I just hand up

16  something to Your Honor, which I've already given to

17  Mr. Haug.

18            THE COURT:  Okay.

19            MR. CALMANN:  These are orders in five other cases

20  from Judge Shwartz now, of course Third Circuit judge; and

21  Judge Shipp, which was entered when he was a magistrate

22  judge; along with the orders from Judge Falk, Judge Dickson,

23  and Judge Donio.

24            THE COURT:  Okay.

25            MR. CALMANN:  In each of those cases, the Court

 1   ordered that there be two separate states for motions to

 2   amend and to add parties.  And the motions to amend relate to

 3   motions to amend pleadings as well as to amend contentions

 4   and other amendments under 3.7 of local patent rules.

 5           The reason for it -- and I argued it in a couple of

 6   those cases -- it relates to increase efficiency for

 7   Your Honor.  Under the local patent rules, which are designed

 8   to really be customized for individual cases, the purpose is

 9   to -- at least, as I understand it, is to try to make it

10   easier on the Court.  One of the things we can accomplish

11   here is to avoid unnecessary motion practice on the

12   early-stage motions to amend.  There's been no harm

13   demonstrated, certainly not at those five cases, when it was

14   argued the other way, and each of the judges ordered that

15   there be two separate dates.

16           And that's what we're suggesting here, because it

17   increases efficiency for everybody, it avoids unnecessary

18   motion practice, it's a question of placing the date in the

19   schedule and then having a later date for motions to amend

20   with leave of Court under our normal procedures.

21           So we were suggesting that it be adopted here as

22   well as it has in those other cases.

23           THE COURT:  Okay.  I'll hear from plaintiffs.

24           ATTORNEY FOR PLAINTIFF:  Your Honor, we strenuously

25   oppose both of those applications.  I'll address the second

 1   one first.  Motions to amend -- we think Your Honor should

 2   follow the local rules, the New Jersey rules.  There's no

 3   reason to deviate from them.  The five cases or whatever the

 4   number of cases are that Mr. Calmann handed to me about 10

 5   minutes before we started today, I haven't candidly had a

 6   chance to really review.  However, there are discovery orders

 7   in other cases before other judges.  I have no idea if the

 8   parties didn't agree to that.  I have no idea what the -- the

 9   circumstances were in each of those cases.  In no way are

10   they binding in any way on this Court or even persuasive in

11   my judgment.

12           In addition, I happened to look at the first one,

13   and it's like two weeks.  It's like the contentions are due

14   on a day, and then you can amend, like, within two weeks.

15           The proposal that they have submitted to Your Honor

16   is like months.  And so the rules are -- were carefully

17   drafted for a purpose, and that is not to work a prejudice on

18   any of the parties.  When you put in your contentions, you

19   have to put it all there in the contentions.  And that's how

20   everything is set from there.  The Markman procedures are set

21   from there and everything else.

22           And I see no reason to deviate from Rule 3.7, which

23   does allow amendment of the contentions for good cause.

24           And that's, I think, what should -- should be the

25   case here.  I see no reason to deviate from it.

1         If Your Honor would like us to, you know,

2    letter-brief this or something, you know, I'm happy to do

3    that.  But I think this is a big issue, because, you know,

4    you need to lock in the contentions before you do the Markman

5    proceedings and so on and so forth.  I've got three

6    defendants I'm looking at.  I want to know what everybody's

7    contentions are.  They want to know what mine are on

8    infringement, et cetera.

9         The second issue or the other issue, which is on

10   willfulness, the defendants are proposing bifurcation on

11   willfulness and -- case.  I think the difficulty is where do

12   you draw the line between this discovery goes to willfulness

13   versus it goes to infringement.  Okay.  And my only problem

14   with that is I may not know if defendants are making a

15   decision in their own mind, well, this document goes to

16   willfulness in my judgment and not infringement, and they

17   just don't ever produce it.  I just really don't know.

18        In addition, if the bifurcating is -- and

19   Your Honor says we're bifurcating, are we just ignoring

20   Rule 3.8, which is advice of counsel, right, which is the

21   rule that says if they're going to rely on advice of counsel,

22   they have to produce the opinion one month after the Markman

23   ruling.

24        And that decision would go to whether or not

25   there's a willfulness allegation in the case, I think.  And

1   so if by saying they want this bifurcated, I think they're

2   also saying we should just forget about Rule 3.8.  And I

3   don't see any reason to do that.

4             THE COURT:  Okay.  Thank you.

5             MR. CALMANN:  Your Honor, on the willfulness

6   question, there are a myriad number of cases.  While it pains

7   me to disagree with Mr. Haug, who I've known many years --

8             THE COURT:  The ones that were cited in your joint

9   submission.

10            MR. CALMANN:  Yeah.  Right.  And I'm sure he's

11  pained in disagreeing with me as well.

12            But -- or perhaps he thinks of me just as a pain.

13  I am not sure which way -- Your Honor.

14            Nonetheless, the same arguments have been raised

15  numerous other cases on willfulness, and it has been

16  bifurcated, and Rule 3.8 has not been read out of the

17  (indiscernible).  The process works along in accordance with

18  the schedule (indiscernible).

19            On the double dates, as Your Honor can see, even in

20  Judge Shipp's case, the second date, which was amendments

21  without leave of court was after submission of Markman

22  briefs, and there was also later in a couple of the other

23  cases.  Well, Mr. Haug is correct.  In the case before Judge

24  Donio, she happened to set the date a little bit earlier.

25  But in at least three of these cases, I argued and there was

1   a contentious discussion about it, and the court ordered the

2   entry of two different dates.

3           THE COURT:  Okay.  Thank you.

4           All right.  I will reserve decision on these just

5   so I can take a closer look both sides' arguments and the

6   papers you've submitted.

7           Anything else for plaintiffs for today?

8           ATTORNEY FOR PLAINTIFF:  No, Your Honor.

9           THE COURT:  No?

10          Anything else for defendants?

11          MR. PETERKA:  Your Honor, Jim Peterka for Zydus.

12          Just wanted to just talk real briefly, we didn't

13  really touch on many of the later dates --

14          THE COURT:  Yup.

15          MR. PETERKA:  In that the schedule --

16          THE COURT:  But I said that I messed up some in my

17  draft, so I want to go back to your papers and go through --

18  comb through them again.

19          MR. PETERKA:  That's fair.  Yeah, I just wanted to

20  give a little bit of context as to why, you know, the

21  defendants, as you can see, we work pretty hard -- pretty

22  close on the schedule with the plaintiffs for a lot of these

23  dates, and the defendants all agreed on a schedule amongst

24  themselves.

25          One of the things that I keep to keep in mind here

 1   is this is a Hatch-Waxman case.  Given -- given that it's a

 2   Hatch-Waxman case, we have the statutory 30-month stay of

 3   approval --

 4             THE COURT:  Right.

 5             MR. PETERKA:  -- after receiving notice letter.

 6             Defendants tried to work with the schedule -- if

 7   you look -- obviously some of the earlier dates are all

 8   agreed upon with the plaintiffs.  If you get towards the back

 9   end of the schedule --

10             THE COURT:  Less agreement.

11             MR. PETERKA:  -- defendants, there's less

12   agreement, but we're not off by that much.  We tried to sort

13   of shorten some of the dates where we could to try to get

14   this case to trial and decision before the 30 months' stay --

15             THE COURT:  Right.

16             MR. PETERKA:  -- so we think those dates are

17   reasonable.  We don't think there's much prejudice to either

18   the plaintiffs, defendants, obviously, or the Court.  And we

19   would just want to give you that context for when you're

20   considering those dates.

21             THE COURT:  Okay.  All right.  Thank you very much.

22             I appreciate the fine work from all counsel.  And I

23   look forward to that continuing and to seeing or at least

24   hearing from your folks in August.  Thank you very much.

25   This matter is adjourned.

|Hearing
|14-cv-06102, April 14, 2015

1                UNIDENTIFIED SPEAKERS:  Thank you, Your Honor.

2                THE COURT:  All the best.

3                 (Conclusion of proceedings at 5:25 P.M.)

|Hearing
|14-cv-06102, April 14, 2015
Certification

43

1                           Certification

2           I, SARA L. KERN, Transcriptionist, do hereby certify

3      that the 43 pages contained herein constitute a full, true,

4      and accurate transcript from the official electronic

5      recording of the proceedings had in the above-entitled

6      matter; that research was performed on the spelling of proper

7      names and utilizing the information provided, but that in

8      many cases the spellings were educated guesses; that the

9      transcript was prepared by me or under my direction and was

10     done to the best of my skill and ability.

11          I further certify that I am in no way related to any of

12     the parties hereto nor am I in any way interested in the

13     outcome hereof.

14

15

16

17

18     S/ *Sara L. Kern*                      22nd of April, 2015

19     _____        _____
       Signature of Approved Transcriber              Date

20

21
       Sara L. Kern, CET**D-338
22     King Transcription Services
       3 South Corporate Drive
23     Riverdale, NJ  07457
       (973) 237-6080
24

25